UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN CLAUSEN,

               Petitioner,

v.                                Case No. 3:05-cv-1314-J-12HTS

JAMES R. MCDONOUGH, et al.,

               Respondents.

_____

## ORDER

### I. Status

Petitioner Clausen initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on September 19, 2005. Petitioner challenges a 2001 state court (Seminole County, Florida) conviction for grand theft on the following grounds: (1) ineffective assistance of trial counsel for failure to present an effective argument in support of a downward departure sentence, and ineffective assistance of appellate counsel for failure to raise the departure issue on direct appeal, and (2) the Florida Criminal Punishment Code, which permits sentences exceeding the statutory maximum without limit based on

discretionary score sheet calculations, violates the due process right to fair warning of the consequences of committing a criminal offense.

Respondents filed an Amended Response to Petition (Doc. #17) (hereinafter Response).   In support of their Response, they submitted exhibits.[1]  Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.   See Court's Order (Doc. #16).   Petitioner has responded.   See Petitioner's Reply (Doc. #19).  This case is now ripe for review.

## II. Procedural History

On September 17, 2001, Petitioner Clausen entered a plea of no contest "to the bench" on one offense:  grand theft.  Ex. A at 30-31, Plea Agreement.  The written plea agreement reflects that the mandatory minimum sentence is 99.7 months.  Id. at 30.  At the sentencing, Petitioner requested a downward departure based upon the fact that Petitioner cooperated with law enforcement.  Id. at 79-80.  The trial judge denied the request for mitigation and imposed a guideline sentence of 99.7 months.  Id. at 32-40, 82-83.

On appeal, Petitioner Clausen, through counsel, raised one issue: the Florida Supreme Court still has under review the following certified question:  "May a trial court sentence a defendant to a term in excess of the statutory maximum for an

---

[1] Respondents' exhibits will be hereinafter referred to as "Ex."

2

offense committed after October 1, 1998, where the lowest permissible sentence under the Code exceeds the statutory maximum?" Ex. B. The State filed an Answer Brief. Id. On October 1, 2002, the appellate court per curiam affirmed without issuing a written opinion. Ex. C. The mandate was issued on October 18, 2002. Id.

On or about February 24, 2003, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising seven grounds: (1) the trial court erred by imposing a 99.7 month sentence when the statutory maximum is sixty months; (2) defense counsel was ineffective for failure to object to the 99.7 month sentence when the statutory maximum is sixty months; (3) counsel was ineffective for misadvising Petitioner that he would receive less than 99.7 months because the court would give a downward departure sentence; (4) substitute counsel should have requested a continuance when the court rejected his arguments regarding the downward departure; (5) the trial court violated the plea bargain by imposing a 99.7 month sentence when the plea agreement also stated that the maximum sentence was sixty months; (6) counsel was ineffective for failure to file a motion to suppress; and, (7) counsel was ineffective for advising that there was no defense to the "endeavor" element of grand theft. Ex. D at 113-55.

On June 18, 2003, the trial court denied relief on five grounds, and the State was ordered to respond to the remaining two

grounds (grounds three and six). <u>Id</u>. at 93-112. After the State's response, the trial court, on July 11, 2003, set an evidentiary hearing on ground three and denied ground six. <u>Id</u>. at 65. At the evidentiary hearing, Petitioner, through counsel, presented a supplemental claim to his motion, which was construed as ground eight (counsel was unprepared at sentencing by failing to provide case law to the court in support of his request for a downward departure). <u>Id</u>. at 14-15. After the evidentiary hearing, the trial court, on February 27, 2004, found counsels' testimony to be more credible than Petitioner's testimony and denied ground three. <u>Id</u>. at 9. Further, the court denied ground eight. <u>Id</u>. at 10.

After an <u>Anders</u>[2] brief was filed, Petitioner filed a *pro se* brief challenging five of the eight grounds denied by the trial court. Ex. E. The State did not file an Answer brief. On August 31, 2004, the appellate court per curiam affirmed without issuing a written opinion. Ex. F. The mandate was issued on September 17, 2004. <u>Id</u>. Petitioner's motion for rehearing was denied on October 8, 2004. <u>Id</u>.

On or about October 15, 2004, Petitioner filed a second *pro se* Rule 3.850 motion for post conviction relief, raising the following ground: the Criminal Punishment Code (Fla. Stat. § 921.0024) violates the due process right to adequate notice of the statutory maximum penalty. Ex. G. On November 8, 2004, the trial court

---

[2] <u>Anders v. California</u>, 386 U.S. 738 (1967).

4

denied the motion as an abuse of procedure and alternatively on the merits.  Ex. H.  On August 9, 2005, the appellate court per curiam affirmed, citing Hall v. State, 823 So.2d 757 (Fla. 2002) (holding that the Criminal Punishment Code is constitutional; "By virtue of the Florida Statutes and the laws of Florida, a defendant has constructive notice of the penalty for statutory crimes."). Ex. I. The mandate was issued on August 26, 2005. Id.

On or about August 16, 2004, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus, alleging ineffective assistance of appellate counsel for failure to raise on direct appeal the following issue: the trial court's error in imposing a 99.7 month sentence when the statutory maximum is sixty months.  Ex. J.  On August 27, 2004, the appellate court denied the petition.  Ex. K.

As noted by the Respondents, the Petition for Writ of Habeas Corpus, filed in this Court on September 19, 2005, is timely filed within the one-year period of limitation.  See Response at 3; 28 U.S.C. § 2244(d).

### III. Evidentiary Hearing

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing.  A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999)

(citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").  No evidentiary proceedings are required in this Court.  High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can "adequately assess [Petitioner's] claim[s] without further factual development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

## IV. Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox

v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998),

cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners. Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996. AEDPA applies to all petitions filed after its effective date. . . .

> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases. Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Subsection (d) of § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable

7

> determination of the facts in light
> of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

> AEDPA also makes clear that substantial
> deference is to be accorded a state court's
> findings of fact.  Section 2254(e)(1) provides
> that "a determination of a factual issue made
> by a State court shall be presumed to be
> correct.  The applicant shall have the burden
> of rebutting the presumption of correctness by
> clear and convincing evidence."  28 U.S.C. §
> 2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003)
(footnote omitted), cert. denied, 543 U.S. 811 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications:  "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness."  Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

8

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S. ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519). A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. See Williams, 529 U.S. at 404-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring).
>
> . . . .
>
> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring). In deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard. Id. at 409-10, 120 S.Ct. at 1521-22. The Supreme Court recently adhered to its pronouncements in Williams, stating that "we stressed in

> <u>Williams</u> that an unreasonable application is
> different from an incorrect one." <u>Bell v.</u>
> <u>Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
> L.Ed.2d 914 (2002).  The Court further noted
> that "a federal habeas court may not issue a
> writ under the unreasonable application clause
> 'simply because that court concludes in its
> independent judgment that the relevant state-
> court decision applied clearly established
> federal law erroneously or incorrectly.'" <u>Id</u>.
> (quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct.
> at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert</u>. <u>denied</u>, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence.  <u>See id</u>. at § 2254(e)(1).  This presumption of correctness applies equally to factual

determinations made by state trial and appellate courts." <u>Bui v.</u>
<u>Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an
adjudication on the merits, so that the state court's determination
will be entitled to deference for purposes of federal habeas corpus
review under AEDPA, all that is required is a rejection of the
claim on the merits, not an opinion that explains the state court's
rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of</u>
<u>Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S.
906 (2003). Thus, to the extent that Petitioner's claims were
adjudicated on the merits in the state courts, they must be
evaluated under the new § 2254(d).

### V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective
assistance of counsel. That right is denied when a defense
counsel's performance falls below an objective standard of
reasonableness and thereby prejudices the defense." <u>Yarborough v.</u>
<u>Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).
"[H]indsight is discounted by pegging adequacy to 'counsel's
perspective at the time' . . . and by giving a 'heavy measure of
deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 125 S.Ct.
2456, 2462 (2005) (citations omitted). If counsel's performance
falls "below the line of reasonable practice, there is a further

question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id</u>. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000) (en banc) <u>cert</u>. <u>denied</u>, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Id</u>. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>See</u> <u>Strickland</u>, 104 S.Ct. at 2066.
>
> The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken

12

the action that his lawyer did take."  <u>See</u>
<u>Chandler</u>, 218 F.3d at 1315. . . .

  A petitioner's burden of establishing
that his lawyer's deficient performance
prejudiced his case is also high.  "It is not
enough for the [petitioner] to show that the
errors had some conceivable effect on the
outcome of the proceeding.  Virtually every
act or omission of counsel would meet that
test."  <u>Strickland</u>, 104 S.Ct. at 2067.
Instead, a petitioner must establish that a
reasonable probability exists that the outcome
of the case would have been different if his
lawyer had given adequate assistance.  <u>See</u> <u>id</u>.
at 2068.[3]

<u>Van Poyck</u>, 290 F.3d at 1322-23 (footnotes omitted).

In sum, "[w]ithout proof of both deficient performance and
prejudice to the defense, . . . it could not be said that the
sentence or conviction 'resulted from a breakdown in the adversary
process that rendered the result of the proceeding unreliable,' and
the sentence or conviction should stand."  <u>Bell v. Cone</u>, 535 U.S.
685, 695 (2002) (internal citation omitted) (quoting <u>Strickland v.</u>
<u>Washington</u>, 466 U.S. 668, 687 (1984)).

---

[3] However, "when a defendant raises the unusual claim that
trial counsel, while efficacious in raising an issue, nonetheless
failed to preserve it for appeal, the appropriate prejudice inquiry
asks whether there is a reasonable likelihood of a more favorable
outcome on appeal had the claim been preserved."  <u>Davis v. Sec'y</u>
<u>for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per
curiam) (citation omitted).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground 1(a), Petitioner claims that defense counsel was ineffective for failure to present an effective argument in support of a downward departure sentence.   Further, as ground 1(b), Petitioner contends that appellate counsel was ineffective for failure to raise the departure issue on direct appeal.   This Court is satisfied that Petitioner has sufficiently exhausted these issues in state court.   Ex. D; Ex. J.

In Petitioner's *pro se* Rule 3.850 motion and in his supplement to the Rule 3.850 motion, Petitioner raised this ineffectiveness of trial counsel ground, basically contending that counsel had not adequately argued for a downward departure.[4]   In sum, Petitioner is dissatisfied that the trial court imposed a 99.7 month sentence when the statutory maximum is sixty months and thus places the blame upon substitute counsel for his failure to properly argue for a downward departure.   Petitioner raised the basis for this ineffectiveness ground in his *pro se* Rule 3.850 motion for post conviction relief as well as expanding upon it in his supplement, which was filed by counsel.   The trial court adjudicated the claims

---

[4] Petitioner also raised the same claim in his supplement to his Rule 3.850 motion (Ex. D at 14-15), and the trial court ruled that this issue was either raised or should have been raised on direct appeal and therefore cannot be reargued in a Rule 3.850 motion.   <u>Id</u>. at 10.   While Respondents argue this ineffectiveness claim is procedurally barred, this Court is not so convinced.

on the merits.   In denying the claims, the trial court set forth the *Strickland* ineffectiveness standard and stated, in pertinent part:

> The Defendant's second ground is that counsel was ineffective for failing to object to the 99.7 months sentence when the statutory maximum is 60 months.  He claims that there is a conflict between Fla. Stat. §§ 921.002 and 921.0024 regarding whether the maximum sentence should be the statutory maximum in Fla. Stat. § 775.082 or the minimum guidelines sentence in Fla. Stat. § 921.0024, and that the rule of lenity should apply.  He claims that counsel should have objected to preserve the error pursuant to *Butler v. State*, 774 So.2d 925 (Fla. 5th DCA 2001), wherein the Fifth District certified a question to the Florida Supreme Court about what a trial court should do in such a situation.  However, in the time since the Defendant filed his motion, the Florida Supreme Court affirmed *Butler*, stating that a Defendant should receive the minimum guidelines sentence in this situation. *Butler v. State*, 838 So.2d 554 (Fla. 2003). Therefore, the Defendant has not shown prejudice in accordance [with] *Strickland*, as the trial court entered the proper sentence. Post-conviction relief should be denied as to this issue.
>
> . . . .
>
> Fourth, the Defendant claims that substitute counsel should have requested a continuance when the court rejected his arguments regarding the downward departure. Downward departures are available only for specific statutory reasons.  Counsel argued that the Defendant was a drug addict and that he cooperated with the state, both at the investigation stage and in entering a plea to the charges.  (See excerpt of sentencing hearing, attached as Exhibit B).  The Court rejected these arguments, stating that the Legislature had done away with the departure

based upon drug addiction, and that cooperation with the state was for those situations when there are multiple co-defendants and one makes a deal to assist in the prosecution of the other co-defendants. The court also believed that it could not depart based upon the entry of a plea bargain. After counsel's full evidentiary presentation, there was no legitimate ground for a continuance (footnote: A court cannot grant a continuance every time a party gets an adverse ruling to allow them to do further research on the litigated issue.  Cases would never come to a conclusion if this were the case.) **Counsel was not ineffective in the presentation regarding a downward departure.** Any adverse rulings by the court regarding the availability of a downward departure were or should have been raised on direct appeal. Therefore, this issue cannot be raised in a motion under Fla. R. Crim. P. 3.850.  *See Medina v. State, supra*.  Post-conviction relief should be denied as to this claim.

Ex. D at 94-95 (emphasis added).

Further, after a response by the State and an evidentiary hearing, the trial court further stated:

At his hearing on ground 3, the Defendant testified on his behalf, and the State called Craig Lynd, who was counsel at the time of the plea, and Matthew Englett, who represented the Defendant at sentencing. The Defendant claimed that Lynd convinced him to accept a plea because he said that there was a strong possibility that the Court would grant a downward departure sentence. He states that he would not have entered a plea without this advice. Lynd testified that he did not so advise. He claims that there was little chance to prevail at trial. He thought that there was a slim chance that the court would grant a downward departure upon entry of a plea, but if the Defendant proceeded to trial, then that slim chance would be eliminated. Englett testified that he did not tell the

> Defendant his chances of receiving a downward departure. This Court finds that counsels' testimony was more credible. Neither promised a departure; the representation was that his only chance of receiving one was if the Defendant entered a plea. **The ground for departure was argued to the Court and rejected. Neither attorney was ineffective in their representation of the Defendant**, so post-conviction relief should be denied as to this allegation.

Id. at 9 (emphasis added).

And, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the

17

facts in light of the evidence presented in the state court proceedings.

The following brief rendition of the facts is necessary for resolution of this ineffectiveness claim. Petitioner was charged with grand theft ($300.00 or more, but less than $20,000.00). Ex. A at 3, Information. On September 17, 2001, Petitioner entered a plea of no contest for the offense of grand theft. <u>Id</u>. at 30-31, Plea Agreement. The written plea agreement reflects that the mandatory minimum sentence is 99.7 months. <u>Id</u>. at 30. A sentencing hearing was held on October 22, 2001. <u>Id</u>. at 65. Matthew Englett appeared as counsel for Petitioner because his partner, Mr. Lynd, was on vacation. <u>Id</u>. at 67. Petitioner wanted to proceed with the sentencing. <u>Id</u>. at 67-68.

Defense counsel set forth for the trial judge the possible penalty that Petitioner faced:

> Just to kind of give you an idea of what we're looking at, charged with a grand theft, an F-3, Statutory maximum is five years, however, with his priors, he scores eight years under the guidelines. We're going to be asking for a Statutory mitigator, that you consider that and go below the eight years.

<u>Id</u>. at 71. Defense counsel called Petitioner to testify and explain to the trial judge how Petitioner cooperated with law enforcement. <u>Id</u>. at 72.

Petitioner testified:

> Well, I had stolen some merchandise and
> had it out in my vehicle and I went back in
> again to the store and had some more
> merchandise ready to push out in a cart, and I
> decided not to do it. When I pushed the cart
> through the -- and made a beeper go off, so I
> went the other way, out of the store and one
> of the employees followed me and called the
> police on the cell phone. I was apprehended,
> brought back to the store and in the police
> car out front and they came and said if I was
> to return the stuff that I had out in the car,
> that they would release me and they'd let me
> go, no charges pressed. So, I did. And, they
> let me go, but they said that they were going
> to write a -- send a Capias out on me for the
> other stuff that I was going to push out of
> the store. So, I was released from the scene
> and then later I was --

Id. at 72. Petitioner explained that he admitted to taking the merchandise, cooperated with the police officers and gave the merchandise back to the store. Id. at 73. Petitioner admitted that he had committed several prior theft-related crimes due to a drug problem that he battled for years. Id. Petitioner's father testified that he never knew his son to be a violent person, but that all of Petitioner's problems stemmed from drug abuse. Id. at 76.

Defense counsel argued that the trial court could depart downward due to Petitioner's cooperation with law enforcement "for the resolution of the case." Id. at 77, 79-82. The trial judge responded as follows:

> Actually, that's not the basis for the
> downward departure. The basis for the

downward departure is, is [sic] the Defendant cooperated with the State to resolve the current offense or any other offense.[5]  I was on the Guidelines Commission when all of this was put together and the reason for this downward departure was not simply -- not simply because the Defendant cooperated with Law Enforcement.  The question was whether or not the Defendant would cooperate with the State and mostly we were thinking about cases where there were multiple Defendants and one of the Defendants would cooperate and testify against the others and that sort of thing.[6]

I suppose it could be construed to be the solving of a crime.  In fact, we got one that's been in Judge Dickey's court right now. Matter of fact, a death penalty case where cooperation with the State is going to be resulting in something less than the death penalty.  But, that's what this was designed for.  It wasn't designed for persons who simply cooperate with the Law Enforcement and don't contest the matters and plead guilty.

---

5 See State v. Bleckinger, 746 So.2d 553, 555 (Fla. 5th DCA 1999) (stating that the statutory mitigating factor of cooperation with the State requires the defendant to cooperate with the State to resolve the current offense or any other offense; it requires more than a confession to the authorities after arrest and pleading guilty).

6 See State v. Bell, 854 So.2d 686, 691 (Fla. 5th DCA 2003) (stating the burden was on the defendant to show that a crime had been resolved as a result of her cooperation; she failed to prove that she actually testified against the co-defendant or that the co-defendant was convicted as a result of her cooperation), rev. denied, 866 So.2d 1212 (Fla. 2004); State v. Davis, 537 So.2d 192, 193 (Fla. 2nd DCA 1989) (stating that defendant's cooperation was sufficient to support downward departure where defendant gave the police information resulting in the arrests of three co-defendants and in solving numerous other crimes); State v. Collins, 482 So.2d 388, 389 (Fla. 5th DCA 1985) (concluding that the record did not support departure on the basis of cooperation where the assistance did not result in solving any crimes; "Merely pleading guilty is not sufficient cooperation for a departure, nor is admitting guilt.").

The reason for that is, is [sic] the guidelines are supposed to sentence a structure, supposed to take into account that, and Judges are supposed to have the flexibility to impose a lesser sentence based upon the range of choices that they have.

Unfortunately, because this is one of those cases where the points on sentence range exceeds the maximum sentence authorized by law, I don't have a lot of discretion as to what to do. I don't have a -- I don't have a grounds [sic] for departure on the basis that he cooperated with the State because that's just not what this is all about. And, I don't have any flexibility about going downward for any other reason that I can think of. I certainly can't do a downward departure because of his drug addiction because the Legislature took that away from me.

. . . .

Well, I don't think it rise -- it rises to the level of me being able to make a willful downward departure on that basis. What's happen [sic] with sentencing structure in Florida is that it's gotten to be piecemeal, one thing here, one thing there. They took away the ceiling and left the floor and it's just -- it's often times in these cases it works an injustice and there's -- I have no -- I have no flexibility. The minimum sentence that I can impose, according to the Sentencing Code, is 99.7 months. I can't impose any more because that's already in excess of what the lawful sentence is as authorized by law of five years and I can't impose any less without doing a downward departure and there just isn't a reason for a downward departure. There just isn't.

. . . .

So, what happens is, because of the way the sentencing structure is, Prosecutors have as much authority to decide sentences as Judges do, so what you end up having to do

with a case like this, you have to speak to
the Prosecutors and hope you can get them to
agree to give the client some sort of
consideration that the fact he's entered a
plea, he's admitted his guilt, he didn't
contest it, he didn't cost the taxpayers a
bunch of money, doesn't -- any of those
things, and yet, he stands here without any --
without any reward for his cooperation.  And,
I can't give him a Judicial reward.

    . . . .

Maybe you can get the District Court of
Appeal to review this record and I make it
very plain that I don't think that I have the
authority to consider a downward departure on
the basis of the Defendant enters a plea of
guilt and cooperates with the police, without
more - without intervention from the State
Attorney's Office.  That is what I interpret
the Statute and the reason for the downward
departure to mean, cooperation with the State
is not cooperation with Law Enforcement.  It's
cooperation with the State Attorney.

    . . . .

There are people who may disagree with my
interpretation, maybe you can get two of the
three in Daytona to do that.  But, that's --
that's where I am.  And, I'm -- I will tell
you, quite frankly, I would consider a
downward departure on the basis that he has
pled guilty and, you know, he did all the
things that he should have done to come to
grips with this crime and admit his guilt.
But, I don't think I have the authority to do
that.

All right.  Mr. Clausen, I'm going to
adjudicate you to be guilty of the offense of
grand theft, sentence you to serve 99.7 months
in the Department of Corrections in the State
of Florida with credit for 227 days time
served.  The costs in the case are waived.

Id. at 77-83.

Based on the record before this Court, it is clear that defense counsel argued to the trial judge that a downward departure was permissible under the law. _Id_. at 77, 79-82. After the trial judge explained his reasoning, defense counsel "respectfully" disagreed and again explained his rationale for the downward departure. _Id_. at 81-82. The issue was preserved for review regardless of whether or not specific case law authority was cited at the hearing. In fact, the trial judge stated, at the hearing, that Petitioner "can get the District Court of Appeal to review this record . . . ." _Id_. at 81.

The trial judge's decision to impose a downward departure is discretionary.

> At a minimum, the trial court must impose the lowest permissible sentence calculated according to the Criminal Punishment Code unless the court finds that the evidence supports a valid reason for a downward departure. _See e.g._, § 921.002(1)(f) & (3), Fla. Stat. (1999); State v. Henderson, 766 So.2d 389, 390 (Fla. 2d DCA 2000). The decision to depart from the minimum sentence mandated by the Criminal Punishment Code is a two-part process. Banks v. State, 732 So.2d 1065 (Fla. 1999); State v. Schillaci, 767 So.2d 598 (Fla. 4th DCA 2000). First, the trial court must decide whether it can depart by determining whether "there is a valid legal ground and adequate factual support for that ground" in the case pending before it. Banks, 732 So.2d at 1067. That decision will be affirmed on appeal if any reason provided by the trial judge is valid and supported by competent substantial evidence. State v. Clay, 780 So.2d 269, 270 (Fla. 5th DCA 2001). The second step requires the trial court to determine "whether departure is . . . the best

> sentencing option for the defendant. . . .  In
> making this determination, the court must
> weigh the totality of the circumstances in the
> case, including aggravating and mitigating
> factors." Banks, 732 So.2d at 1068.  "This
> second aspect of the decision to depart is a
> judgment call within the sound discretion of
> the court and will be sustained on review
> absent an abuse of discretion.  Discretion is
> abused only where no reasonable person would
> agree with the trial court's decision." Id.
> An appellate court will uphold a departure
> sentence if any reason given by the trial
> judge is a valid reason for departure. *See* §
> 921.002(3), Fla. Stat. (1999).

State v. Tyrrell, 807 So.2d 122 (Fla. 5th DCA 2002).

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted).  Defense counsel persistently argued that Petitioner was entitled to a downward departure; however, the trial judge disagreed.  Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient in arguing for a downward departure to the trial judge at the sentencing hearing.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the

24

assistance that Petitioner has alleged he should have provided. Thus, this ineffectiveness claim is without merit. <u>See</u> Response at 4-8.

Further, as ground 1(b), Petitioner contends that appellate counsel was ineffective for failure to raise the departure issue on direct appeal. Petitioner raised this claim in his *pro se* Petition for Writ of Habeas Corpus, and the appellate court denied the petition. Ex. J; Ex. K.

As noted previously, in <u>Strickland</u>, the United States Supreme Court articulated a two-pronged test for determining whether a defendant was denied constitutionally adequate assistance of counsel. "The same standard applies whether [a court is] examining the performance of counsel at the trial or appellate level." <u>Eagle v. Linahan</u>, 279 F.3d 926, 938 (11th Cir. 2001) (citing <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11th Cir. 1987)).

To demonstrate that his appellate counsel's performance was deficient, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 687. "In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'" <u>Eagle</u>, 279 F.3d at 940 (quoting <u>Strickland</u>, 466 U.S. at 691). "Thus, '[a] fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time.'" Id. (quoting Strickland, 466 U.S. at 689). The reasonableness of counsel's assistance is reviewed in light of both the facts and law that existed at the time of the challenged conduct. Chateloin v. Singletary, 89 F.3d 749, 753 (11th Cir. 1996); see also Jones v. United States, 224 F.3d 1251, 1257-58 (11th Cir. 2000) (noting that counsel's "failure to divine" a change in unsettled law did not constitute ineffective assistance of appellate counsel) (quoting Sullivan v. Wainwright, 695 F.2d 1306, 1309 (11th Cir. 1983)).

To determine whether Petitioner was prejudiced by his attorney's failure to raise a particular issue, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)), cert. denied, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." Eagle, 279 F.3d at 943 (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)).

26

Here, it is clear that appellate counsel's performance was not deficient, and Petitioner was not prejudiced when this claim was not included in Petitioner's direct appeal. This claim is without merit.

Additionally, this claim was rejected on the merits by the Fifth District Court of Appeal after the filing of the court-ordered response by the State. Ex. K. For the above-stated reasons, it is clear that the state appellate court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

### B. Ground Two

As ground two, Petitioner claims that the Florida Criminal Punishment Code, which permits sentences exceeding the statutory maximum without limit based on discretionary score sheet calculations, violates the due process right to fair warning of the consequences of committing a criminal offense. Petitioner raised this ground in his second *pro se* Rule 3.850 motion for post conviction relief. Ex. G. The trial court denied the motion as an abuse of procedure and alternatively on the merits, stating in pertinent part:

The Defendant has now filed a second motion for post-conviction relief. Here, he alleges that Fla. Stat. § 921.0024 is unconstitutional because it does not allow a Defendant notice of the maximum penalty. This motion should be denied for several reasons. First, this ground was or could have been raised in the first post-conviction motion, and therefore it is an abuse of procedure. Second, the Florida Supreme Court has specifically rejected the Defendant's argument in *Hall v. State*, 823 So.2d 757 (Fla. 2002), wherein the court found that publication in the statutes provides a defendant constructive notice of the potential penalty. Making a defendant perform calculations does not violate his due process rights. The statutory scheme was again found to be valid in *Butler v. State*, 838 So.2d 554 (Fla. 2003) (footnote: Since this sentencing scheme was found to be valid, this motion cannot be alternatively considered as a Motion to Correct [I]llegal Sentence, as it is not an illegal sentence under *Hall* and *Butler*.). Finally, this Defendant cannot show that he was prejudiced because he knew at the time of his plea that he would be facing a 99.7 month sentence if no downward departure sentence was given. (See plea agreement, attached at Exhibit C).

Ex. H. The appellate court per curiam affirmed, citing <u>Hall v. State</u>, 823 So.2d 757 (Fla. 2002) (holding that the Criminal Punishment Code is constitutional; "By virtue of the Florida Statutes and the laws of Florida, a defendant has constructive notice of the penalty for statutory crimes."). Ex. I.

Respondents contend that this claim is procedurally barred because it was not raised in a procedurally correct manner. Response at 8. However, the trial court addressed the merits, and the appellate court per curiam affirmed, citing <u>Hall v. State</u>, 823

So.2d 757.   Accordingly, the claim was rejected on the merits by the state trial and appellate courts.   Thus, there are qualifying state court decisions.   This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Furthermore, the Court finds this claim to be without merit.[7]   See Response at 8-9.   Thus, Petitioner is not entitled to relief on the basis of this claim.

---

[7] See Butler v. State, 838 So.2d 554, 556 (Fla. 2003) (holding that "when section 921.0024(2) applies so that the statutory maximum sentence as provided in section 775.082, Florida Statutes (2002), is exceeded by the lowest permissible sentence under the code, the lowest permissible sentence under the code becomes the maximum sentence which the trial judge can impose"); Hall v. State, 823 So.2d 757 (Fla. 2002); Maddox v. State, 760 So.2d 89, 101 n.9 (Fla. 2000); West v. State, 935 So.2d 123, 124 (Fla. 4th DCA 2006); Demar v. State, 840 So.2d 381, 382 (Fla. 1st DCA 2003); Fla. R. Crim. P. 3.704(d)(25).

## VII. Conclusion

Any other claims not specifically addressed are found to be without merit.  Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this _15th_ day of November, 2006.


HOWELL W. MELTON
United States District Judge


sc 11/8
c:
John Clausen
Ass't Attorney General (Corrente)